# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

STELLA CAMPBELL and      )
SUSAN DURON,          )
                            )
       Plaintiffs,       )
                            )     Case No.:  2:06-CV-127 JVB
           v.           )
                            **)**
EDWARD R. HALL,        )
                            )
       Defendant.      )

## OPINION AND ORDER

Plaintiffs Stella Campbell ("Ms. Campbell") and Susan Duron ("Ms. Duron") (collectively "Plaintiffs") instituted this action against Defendant Edward R. Hall ("Defendant") asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[1] Pending before the Court are Plaintiffs' Motion for Summary Judgment [DE 21] and Defendant's Cross–Motion for Summary Judgment [DE 31].[2] For the reasons set forth below, the Court **DENIES** Plaintiffs' Motion for Summary Judgment [DE 21] with respect to (1) the amount of the debt issue, 15 U.S.C. § 1692g(a)(1); (2) the further communications issue, 15 U.S.C. § 1692g(a); and (3) the thirty–day debt validation issue, 15 U.S.C. § 1692g(a)(3). The Court **GRANTS** Defendant's Cross–Motion for Summary Judgment [DE 31] as to these issues. Furthermore, the Court **WITHHOLDS JUDGMENT** on the issues of whether (1) Defendant is liable under § 1692g(a)(3) by requiring that debt disputes be made in writing until the issue of whether Defendant is entitled to assert the bona fide error defense has been resolved; and (2) the statements Plaintiffs

---

[1]On June 22, 2007, District Judge Philip P. Simon granted Plaintiffs' motion to dismiss the class action allegations in their Complaint [DE 30].

[2]On December 12, 2008, oral argument was held to clarify several of the issues in this case. Plaintiffs' counsel filed supplemental authority with the Court on December 19, 2008 [DE 57].

allege do, in fact, constitute literally false statements for which liability under the FDCPA may be imposed.

**FACTS**

The parties do not dispute the following facts:

**A.    Background**

Defendant is an attorney licensed to practice law in the State of Indiana, and has his principal place of business in Lake County, Indiana. (Def.'s Local Rule 56.1(a) Statement of Material Facts ("Facts") ¶ 1.) Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA. (Facts ¶ 2.) Defendant was retained by Payday Today, a small loan lender, or "payday lender," concerning the collection of two payday loans, one to Ms. Campbell and one to Ms. Duron.  (Facts ¶ 3.)

Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3) of the FDCPA. (Compl. ¶¶ 5, 6.)  Plaintiffs transactions with Payday Today were primarily incurred for personal, family, or household purposes.  (Campbell Aff. ¶ 3, Duron Aff. ¶ 3.)

On July 9, 2005, Ms. Campbell took out a loan with Payday Today in the amount of $230. (Facts ¶ 4.)  Ms. Campbell's loan was to be paid off on July 23, 2005, and she postdated a check in the amount of $230 to Payday Today as security for the loan. (Facts ¶ 5.) When Payday Today deposited Ms. Campbell's check on July 25, 2005, the check was returned to Payday Today marked "NSF" for nonsufficient funds.  (Facts ¶ 6.)  Ms. Campbell  defaulted on her loan, and Defendant sent her a debt collection letter on or about December 1, 2005.  (Facts ¶ 7.)  Because Ms. Campbell

did not repay the loan, Defendant filed suit against her on January 13, 2006. (Facts ¶ 8.) A hearing was scheduled for February 14, 2006 and, on that day, Ms. Campbell entered into an Agreed Judgment. (Facts ¶¶ 8–9.) In the Agreed Judgment, Ms. Campbell admitted to defrauding a financial institution and agreed to pay a judgment of $1,302.91, which included a voluntary wage assignment of $50 every two weeks until the judgment was paid in full. (Facts ¶¶ 9–10.)

Ms. Duron took out a loan with Payday Today in the amount of $230 on August 25, 2005. (Facts ¶ 11.) Ms. Duron's loan was to be paid off on September 10, 2005, and she postdated a check in the amount of $230 to Payday Today as security for the loan. (Facts ¶ 12.) However, when Payday Today deposited Ms. Duron's check on or about September 12, 2005, the check was returned to Payday Today marked as "Refer to Maker." (Facts ¶ 13.) Because Ms. Duron defaulted on her loan, Defendant sent her a debt collection letter on or about March 6, 2006. (Facts ¶ 14.) After receiving the letter, Ms. Duron sent an email to Defendant stating that she had filed bankruptcy in October 2005, and the bankruptcy was discharged on February 6, 2006. (Facts ¶ 15.) Defendant took no further action against Ms. Duron. (*Id*.)

**B.      Debt Collection Letters**

Ms. Campbell and Ms. Duron received the following debt collection letter dated December 1, 2005, and March 6, 2006, which states in pertinent part:

> RE:      DISHONORED CHECK TO Payday Today Inc./Merrillville
>
> Please be advised that this office has been retained to represent the above lender with respect to a small Loan Agreement . . . This lender accepted your check as security for a loan in the amount of ($230.00). The agreement called for your check to be cashed pursuant to the terms of the loan agreement, if you had not previously made arrangements to satisfy the loan. You have failed to make payment to the lender as agreed, and upon presentation, the banking institution on which it

was drawn did not honor your check. You have been previously notified by the lender of your returned check and have taken no action to resolve this matter.

IF YOU WANT TO RESOLVE THIS MATTER WITHOUT A LAWSUIT, now is the time for action. To do so you must pay the following amounts: (1) the full amount of the check plus, (2) a $20.00 returned check fee, and (3) attorney fees of $300.00. This payment must be in the form of a cashiers check or money order payable to Attorney Edward R. Hall. If you fail to pay in full the amount due within ten days from the date of this letter, we may file suit immediately, in which you may be liable for the following amount under I.C. 24–4, 7–5 et seq: (1) the amount of the check, (2) a twenty dollar returned check fee, (3) court costs, (4) reasonable attorney fees, (5) all other reasonable costs of collection, (6) [t]hree times (3x) the amount of the check if the face amount of the check was not greater than $250.00, or (7) if the face amount of the check was $250.[00] or more,  the check amount plus five hundred dollars ($500.00) and pre-judgment interest at the rate of 18% per annum.

IF YOUR CHECK WAS PRESENTED TO THE LENDER IN ANY FRAUDULENT MANNER (*which is determined by the Court*) you could be liable for the following amounts under I.C. 35–43–5–8: (1) [t]hree times the amount of the check, (2) [p]re–[j]udgment [i]nterest at the rate of [e]ighteen [p]ercent (18%) per annum, (3) a twenty dollar returned check fee, (4) court costs, (5) [a]ttorney fees, and (6) [t]hree times (3x) the amount of the check if [sic] the face amount of the check.

If suit is filed and a judgment is obtained against you, the lender may collect said judgment by having the sheriff seize and sell any non–exempt real or personal property of yours or by garnishment of non–exempt wages or other amount that other people owe you. Additionally, the lender may report your default and the amount of this judgment to applicable credit reporting agencies.

IF YOU DISPUTE THIS DEBT, or any portion thereof, you must notify this office in writing of that fact within 30 days of this letter. Exercising this option will not necessarily prevent legal [a]ction from being taken during the 30–day period. This debt will be assumed to be valid under the law unless you so dispute the debt. If you do dispute the debt, this office will obtain verification of the debt and mail such verification to you. To avoid the penalties and consequences stated herein you must contact the law office of Edward R. Hall to discuss your outstanding balance. Please ask for the collection department.

Please Govern Yourself Accordingly.

Sincerely,
COLLECTION DEPARTMENT
Law Office of Edward R. Hall

This is an attempt to collect a debt, and any information obtained will be used for the purposes of assisting in the collection of said debt.

(Compl., Exs. A & B.)


# LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Rule 56© of the Federal Rules of Civil Procedure)). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

In deciding a motion for summary judgment, a court must "review the record in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). Nevertheless, the nonmovant may not rest upon mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact is not shown by the mere existence of  "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252. It is well-settled that summary judgment should be granted

"only where it is perfectly clear that there is no dispute about either the facts of the controversy or the inferences to be drawn from such facts." *Cent. Nat'l Life Ins. Co. v. Fid. & Deposit Co. of Md.*, 626 F.2d 537, 539 (7th Cir. 1980) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In order to determine if the debt collection letters at issue violate the FDCPA, the Seventh Circuit has stated:

> [W]e examine the letters from the standpoint of the so–called unsophisticated consumer or debtor. While the unsophisticated debtor is considered "uninformed, naive, or trusting," he is nonetheless deemed to posses "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." Further, the unsophisticated–debtor standard is an objective one and is not the same as the rejected least–sophisticated–debtor standard; accordingly, we disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters. To that end, a mere claim of confusion is not enough: a plaintiff must show that the challenged "language of the letters unacceptably increases the level of confusion." Under this standard, a plaintiff's anecdotal proclamations of being confused will not suffice: a collection letter cannot be confusing as a matter of law or fact "unless a significant fraction of the population would be similarly misled."

*Durkin v. Equifax Check Servs.*, *Inc.*, 406 F.3d 410, 414–15 (7th Cir. 2005) (citations omitted).

> In some situations, when an FDCPA violation is so "clearly" evident on the face of a collection letter, a court may award summary judgment to the FDCPA plaintiff. On the other hand, mere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion. Thus, when the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self–serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial. We have repeatedly indicated that this need for additional evidence (frequently referred to as "extrinsic evidence") might be met through the use of a carefully designed and conducted consumer survey. Also, we have suggested that an appropriate expert witness might suffice.

*Id.* at 415. (citations omitted).

Accordingly, the Court will consider Plaintiffs' claims under the FDCPA using the unsophisticated consumer or debtor standard.

# ANALYSIS

## A.    Writing Requirement

Plaintiffs contend that Defendant violated §§ 1692g, 1692g(a)(3), 1692d, 1692e, 1692e(10), and 1692f of the FDCPA by requiring that disputes regarding the validity of their debts be made in writing.  (Pls.' Mem. at 10–19.)

## (1)    *15 U.S.C. § 1692g(a)(3)*

Plaintiffs first aver that the language used by Defendant in his debt collection letters stating: "IF YOU DISPUTE THIS DEBT, or any portion thereof, you must notify this office in writing of that fact within 30 days of this letter" violates § 1692g(a)(3) because this section does not require that a debtor dispute the validity of a debt in writing. (Pls.' Mem. at 10.)  Specifically, § 1692g(a)(3) provides in pertinent part:

> (a)    Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (3)    a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

Plaintiffs point out that district courts have already considered whether § 1692g(a)(3) requires a debtor to dispute a debt in writing and have determined that this section does not impose a writing requirement on consumers. (Pls.' Mem. at 13.)  Accordingly, Plaintiffs contend it is clear that Congress did not intend for § 1692g(a)(3) to require a debtor to dispute the validity of a debt in writing.  (*Id*. at 12.)

Defendant, on the other hand, asserts that the issue of whether §1692g(a)(3) requires that a

debtor's dispute regarding the validity of a debt be in writing has divided federal courts. (Def.'s Mem. at 6–9.) Defendant points out that the Seventh Circuit has not yet decided the question of whether § 1692g(a)(3) requires a debtor to dispute a debt in writing and those federal courts that have considered this issue have reached opposite conclusions. (*Id.* at 6.) Defendant contends that he should not be held strictly liable for interpreting § 1692g(a)(3) to require written notice of a dispute of Plaintiffs' debts because he followed an interpretation of this section which is consistent with the Third Circuit case law; namely, *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) and other district courts within the Seventh Circuit. (*Id.* at 9.)

At the outset, the Court notes that whether a consumer's dispute of the validity of a debt under the FDCPA must be in writing appears to be a question of first impression in this circuit. There are only two other circuits that have addressed this issue and each has reached opposite conclusions. The Third Circuit was the first to address the issue and held that "given the entire structure of section 1692g, subsection (a)(3) must be read to require that a dispute, to be effective, must be in writing." *Graziano*, 950 F.2d at 112. In reaching its decision, the *Graziano* court acknowledged the difference in language between subsection (a)(3), which does not expressly require that a debtor's dispute be in writing, and subsections (a)(4) and (a)(5), which do expressly require that the debtor's communications be in writing.[3] *Id.* at 111–12. The Court reasoned:

_____

[3]Subsections (a)(4) and (a)(5) of § 1692g require written notice:

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day

Subsection (a)(3) states that unless the debtor disputes the debt within thirty days of receipt of notice, the debt collector will assume the debt to be valid. Section (a)(4) states that if the debtor disputes the debt in writing within thirty days, the debt collector must obtain verification of the debt and must send the debtor a copy of the verification. Subsection (a)(5) states that, if the debtor makes a written request, the debt collector must provide the name and address of the original creditor. Subsection (b) states that if the debtor disputes the debt in writing within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt. Adopting Graziano's reading of the statute would thus create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid, but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts. We see no reason to attribute to Congress an intent to create so incoherent a system. We also note that there are strong reasons to prefer that a dispute of a debt collection be in writing: a writing creates a lasting record of the fact that the debt has been disputed, and thus avoids a source of potential conflicts. We therefore conclude that subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be in writing.

*Id.*

A number of district courts within the Seventh Circuit have followed the Third Circuit's reasoning in *Graziano* and have determined that a writing is required in order for a consumer to effectively dispute a debt. These courts view § 1692g(a)(3) as having an implied writing requirement. *See e.g.*, *Ingram v. Corporate Receivables, Inc.*, No. 02 C 6608, 2003 WL 21018650

―――――――――――――

period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Subsection (b) of § 1692g provides in pertinent part:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

(N.D. Ill. May 5, 2003); *Jolly v. Shapiro*, 237 F.Supp.2d 888 (N.D. Ill. 2002); *Castillo v. Carter*, No. 99-1757, 2001 WL 238121 (S.D. Ind. Feb. 28, 2001); *Sturdevant v. Thomas E. Jolas, P.C.*, 942 F.Supp. 426 (W.D. Wis. 1996); *see also Blair v. Collectech Systems, Inc.*, No. 97 C 8630, 1998 WL 214705 (N.D. Ill. Apr. 24, 1998); *Flowers v. Accelerated Bureau of Collections, Inc.*, No. 96 C 4003, 1997 WL 136313 (N.D. Ill. Mar. 19, 1997).

In a more recent decision, the Ninth Circuit decided in *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078 (9th Cir. 2005), that a debt collector's letter violates the FDCPA when it states that disputes regarding the validity of debts must be in writing. *Camacho* expressly disagreed with the reasoning in *Graziano* because the Ninth Circuit decided that "we must give effect to the plain meaning of the statute." *Id.* at 1080. The *Camacho* court stated:

> "[W]hen the statute's language is plain, the sole function of the courts–at least where the disposition required by the text is not absurd–is to enforce it according to its terms." The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written "dispute," while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute.

> A statute need not contain parallel language in all of its subsections in order to be internally consistent. Rather, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." If Congress had intended to impose a writing requirement in § 1692g(a)(3), it could have done so in the subsection itself, as it did in the later subsections of § 1692g(a). As in *Lamie* [*v. United States Trustee*, 540 U.S. 526, 534 (2004)], the plain language of the text of § 1692g(a)(3) does not state that the consumer must dispute the debt in writing, and "where the disposition required by the text is not absurd," we must enforce the statute according to its terms.

> Further, the plain meaning of subsection (a)(3) does not lead to absurd results because an oral dispute triggers multiple statutory protections. We thus disagree with the Third Circuit in *Graziano*, which found it absurd that an oral dispute could rebut the presumption of validity but not trigger the verification requirement under § 1692g(a)(4), or the identification requirement under § 1692g(a)(5). *Graziano's* determination that permitting an oral dispute would render the system "incoherent," failed to consider those FDCPA rights that are triggered by an oral dispute.

Oral dispute of a debt precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute. Additionally, if a consumer owes multiple debts and makes a payment, the debt collector is prohibited from applying such payment to a debt which is in dispute. Moreover, a debtor's oral notification to a debt collector entitles a debtor to relief under § 1692c(a)(1), which bars communication with a debtor at "a time or place known or which should be known to be inconvenient to the consumer."

*Id.* at 1081–82. (citations omitted).

The *Camacho* court next stated that while policy considerations may weigh in favor of *Graziano's* interpretation, under *Lamie*, a court "can only insert language into a statute if the result of the statute's plain meaning is absurd." *Camacho*, 430 F.3d at 1082. "Because we conclude that the FDCPA's statutory scheme, which assigns lesser rights to debtors who orally dispute a debt and greater rights to debtors who dispute it in writing, is not absurd, we are not at liberty to insert any additional language." *Id.*

The *Camacho* court went on to state:

Finally, giving effect to the statute's plain meaning is also consistent with legislative intent. Congress' intent in enacting § 1692g was to provide an alleged debtor with 30 days to question and respond to the initial communication of a collection agency. This purpose is further advanced by an interpretation that allows such response to be in either written or oral form. Nor does the plain language of the statute frustrate the purpose of the statute by misleading or confusing consumers. Collection notices that include the statute's verbatim language have been held not to be confusing. Consumers can comprehend the statute's plain language.

*Id.* at 1082. (citations omitted).

Similar to the *Camacho* court, a number of district courts within the Seventh Circuit have held that § 1692g(a)(3) does not impose a writing requirement on a consumer when disputing the validity of a debt. Rather, these courts have reasoned that the plain language of subsection (a)(3) does not require a consumer to dispute the validity of a debt in writing. *See e.g.*, *Chung v. Nat'l Check Bureau, Inc.*, No. 1:04 CV 1857, 2005 WL 1541030 (S.D. Ind. June 30, 2005); *Walters v.*

*PDI Mgmt. Servs.*, No. 1:02–CV–1100, 2004 WL 1622217 (S.D. Ind. Apr. 6, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917 (N.D. Ind. 2004); *Edmonds v. Nat'l Check Bureau, Inc.*, No. 01–1289, 2003 U.S. Dist. LEXIS 17476 (S.D. Ind. Aug. 1, 2003); *Spearman v. Tom Wood Pontiac-GMC, Inc.*, No. 00– 1340, 2002 WL 31854892 (S.D. Ind. Nov. 4, 2002).

Furthermore, the majority of district courts have concluded that § 1692g(a)(3) does not impose a writing requirement on a consumer. *See e.g.*, *Register v. Reiner, Reiner & Bendett, P.C.*, 488 F.Supp.2d 143 (D.Conn. 2007); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 464 F.Supp.2d 720 (N.D. Ohio 2006); *Baez v. Wagner & Hunt, P.A.*, 442 F.Supp.2d 1273 (S.D.Fla. 2006); *Turner v. Shenandoah Legal Group, P.C.*, No. 3:06CV045, 2006 WL 1685698 (E.D. Va. 2006); *Vega v. Credit Bureau Enters.*, No. CIVA02CV1550, 2005 WL 711657 (E.D.N.Y. Mar. 29, 2005); *Nasca v. GC Servs. Ltd. P'ship*, No 01CIV10127, 2002 WL 31040647 (S.D.N.Y. Sept. 12, 2002); *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Act Litig.*, 208 F.R.D. 493 (S.D.N.Y. June 14, 2002); *Sambor v. Omnia Credit Servs., Inc.*, 183 F.Supp.2d 1234 (D.Haw. 2002); *Sanchez v. Robert E. Weiss, Inc.*, 173 F.Supp.2d 1029 (N.D. Cal. 2001); *Castro v. ARS Nat'l Servs., Inc.,* No. 99 CIV. 4596, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Ong v. Am. Collections Enter.*, No. 98–CV–5117, 1999 WL 51816 (E.D.N.Y. Jan. 15, 1999); *Reed v. Smith, Smith & Smith*, No. Civ. A. 93-956, 1995 WL 907764 (M.D.La. Feb. 8, 1995); *Harvey v. United Adjusters*, 509 F.Supp.1218 (D.Or. 1981).[4]

This Court agrees with the reasoning of the Ninth Circuit in *Camacho* and the weight of the authority from district courts which have held that § 1692g(a)(3) of the FDCPA should be

---

[4]In *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64 (1st Cir. 1998), the First Circuit undertook the same type of statutory analysis with § 1692e(8) of the FDCPA. In interpreting § 1692e(8), the First Circuit held that "[t]he fact that other sections of the FDCPA–like § 1692g(b)–explicitly impose a writing requirement suggests that Congress's omission of such a requirement in § 1692e(8) was not inadvertent." *Id.* at 66–67.

interpreted to allow consumers to dispute the validity of their debt in ways other than writing. The Seventh Circuit has counseled that "[o]ur charge is to interpret statutes as they are written, and not to revise them by reading into them policies we deem advisable." *U.S. Dep't of the Navy v. Fed. Labor Relations Auth.*, 975 F.2d 348, 356 (7th Cir. 1992); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) (rejecting the proposition that differing language in two subsections has the same meaning in each). Because the plain meaning of the statute is clear and unambiguous, subsection (a)(3) does not impose a writing requirement on consumers. Accordingly, this Court finds that Defendant's debt collection letters violate § 1692g(a)(3) insofar as they state that disputes regarding the validity of a debt must be made in writing.

**(2)     *Bona Fide Error Defense***

Defendant argues, however, that even if he misinterpreted § 1692g(a)(3) to require written notice of a disputed debt, it was a bona fide error.[5] (Def.'s Mem. at 9–10.) Defendant avers that he never intended to violate the FDCPA and his interpretation of § 1692g(a)(3) requiring written notification of a disputed debt is consistent with Third Circuit law as well as other federal court decisions within the Seventh Circuit. (*Id*. at 9.)

---

[5]Plaintiffs assert that Defendant is not entitled to raise the bona fide error defense as to any allegations contained in their Complaint because he did not plead it in his Answer. (Pls.' Reply at 7–8.) In his Answer, Defendant "reserve[d] the right to assert any and all affirmative defense" as the facts became available. (Def.'s Answer at 3.) Plaintiffs, therefore, contend that Defendant has waived this affirmative defense. To the extent Plaintiffs claim Defendant is precluded from raising the bona fide error defense because he failed to assert it in his Answer, the Seventh Circuit has held that "a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). Here, Plaintiffs were not harmed or prejudiced as they confronted the defense in replying to Defendant's Cross–Motion for Summary Judgment. Furthermore, at oral argument, Plaintiffs' counsel admitted that Plaintiffs had not been prejudiced by Defendant's failure to assert the bona fide error defense in his Answer.

(a)    *Mistakes of Law*

While the parties never discuss or raise the issue of whether the bona fide error defense applies to mistakes of law, the Seventh Circuit "has not yet taken a position on this issue, although it has been willing to assume that the bona fide error defense was applicable to mistakes of law in cases in which that assumption was not outcome determinative because the bona fide error defense failed for another reason." *Kort v. Diversified Collection Servs., Inc.*, 270 F.Supp.2d 1017, 1026 (N.D. Ill. 2003) (citing *Nielsen v. Dickerson*, 307 F.3d 623, 641 (7th Cir. 2002)). In *Nielsen*, the Seventh Circuit stated:

> There is a split of authority among the circuits as to whether the bona fide error defense applies to mistakes of law. The majority view is that the defense is only available for clerical and factual errors. The Ninth Circuit's opinion in *Baker* [*v. G.C. Servs. Corp*, 677 F.2d 775,779 (9th Cir. 1982)], the first appellate precedent on this point, looked principally to the cases that had uniformly construed the Truth-In-Lending Act's ("TILA") bona fide error provision, 15 U.S.C. § 1640(c), not to immunize legal errors. The TILA provision, however, expressly states that "an error of legal judgment with respect to a person's obligations under this subchapter is *not* a bona fide error." It also includes an illustrative list of errors that would constitute bona fide errors, including "clerical, calculation, computer malfunction and programming, and printing errors." By contrast, the FDCPA's provision does not expressly remove legal mistakes from the realm of errors that can be considered bona fide, nor does it in any other way illustrate what types of mistakes can or cannot be deemed bona fide. Noting the distinction between the two statutory provisions, "a growing minority" of courts, . . . have concluded that mistakes of law can be considered bona fide errors under section 1692k(c). Our own opinion in *Jenkins v. Heintz*, 124 F.3d 824, 832 n.7 (7th Cir. 1997), . . . likewise notes that nothing in the language of the FDCPA bona fide error provision limits the reach of the defense to clerical errors and other mistakes not involving the exercise of legal judgment. Yet, as *Jenkins* itself pointed out, there was no evidence that the mistake at issue in that case actually had involved the exercise of any legal judgment. Consequently, we did not have occasion to further illuminate whether and when legal errors constitute bona fide errors under section 1692k(c).

*Id.* at 641–42 (citations omitted); *see also Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1114 (7th Cir. 2008) ("This court has not yet decided whether the *bona fide* error defense applies to mistakes of law.")

In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 502 F.Supp.2d 686 (N.D. Ohio 2007), the district court stated:

> The "growing majority of courts" finding that mistakes of law can be considered bona fide errors note this distinction between the two statutory provisions [TILA and FDCPA]. *See*, for example, *Johnson v. Riddle*, . . . [305 F.3d 1107 (10th Cir. 2002)]: Of the cases which hold that the defense does not apply to mistakes of law, almost all dispense with the issue by citing earlier cases back to the Ninth Circuit's decision in *Baker v. G.C. Servs. Corp.*, . . . *Baker* rested its holding entirely upon the similarity of the FDCPA bona fide error defense to the 'nearly identical' bona fide error defense provided in the [TILA], a provision uniformly interpreted to apply only to clerical errors and not to legal errors.

*Id.* at 694. The *Jerman* court went on to note:

> Unlike TILA, the plain language of the FDCPA suggests no intent to limit the bona fide error defense to clerical errors. To the contrary, § 1692k(c) refers by its terms to any 'error' that is 'bona fide.' We find no indication in the legislative history that Congress intended this broad language to mean anything other than what it says.

*Id.* (citing *Johnson*, 305 F.3d at 1122–23).

The Sixth Circuit affirmed the *Jerman* court holding that the FDCPA's bona fide error defense applies to mistakes of law:

> Indeed, debt collectors may set up "procedures" more often to avoid clerical mistakes, but there is nothing unusual about attorney collectors maintaining procedures, such as frequent education and review of the FDCPA law, in order to avoid mistakes of law. Moreover, the fact that the TILA's bona fide error provision expressly excludes errors of legal judgment while the analogous provision in the FDCPA does not have such limitation suggests that, unlike the TILA, Congress did not intend to limit the defense to clerical errors. Although the FDCPA was adopted when the TILA had identical language that courts had interpreted to exclude legal errors, the legislative history of the FDCPA shows that "a debt collector has no liability . . . if he violates the act in *any* manner . . . when such violation is unintentional and occurred despite procedures designed to avoid such violations." Further, Congress has amended the FDCPA several times since its enactment, and has never changed the language to exclude mistakes of law from the bona fide error defense. In addition, protection for attorneys who make bona fide errors of law is consistent with the FDCPA's purpose of eliminating abusive debt collection practices and ensuring that those debt collectors who refrain from abusive collection practices are not competitively disadvantaged.

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476 (6th Cir. 2008) (citations omitted).

This Court agrees with this reasoning and finds that the bona fide error defense applies to mistakes of law.

(b)      *Defendant's Procedures*

Pursuant to § 1692k(c), the provision governing the bona fide error defense states:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). In order to qualify for the bona fide error defense, a defendant must make three showings under § 1692k(c): (1) the presumed FDCPA violation was not intentional; (2) the presumed FDCPA violation resulted from a bona fide error; and (3) he maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 537 (7th Cir. 2005). The first prong of the bona fide error defense is a subjective test while the second and third prongs are objective tests. *Blarek v. Encore Receivable Mgmt. Inc.*, No. 06–C–0420, 2007 WL 984096, at *9 (E.D. Wis. Mar. 27, 2007) (citations omitted). For the first prong of intent, "[a] debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Kort*, 394 F.3d at 537 (citing *Nielsen*, 307 F.3d at 641) (a debt collector "may avail itself of the bona fide error defense because it had no intent to violate the FDCPA, although its actions were deliberate"); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) ("The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional.  To hold otherwise would effectively negate the bona fide error defense.").

Regarding the second prong, whether the error was bona fide, the error must have been "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort*, 394 F.3d at 538 (citing Black's Law Dictionary 168 (7th ed. 1999) (defining "bona fide" as "1. Made in good faith; without fraud" and "2. Sincere; genuine"). The final prong, which encompasses the procedures component, involves a two–step inquiry: "first, whether the debt collector 'maintained'--i.e., actually employed or implemented--procedures to avoid errors: and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Blarek*, 2007 WL 984096, at *10 (citations omitted). Next, "[Section] 1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors: rather, it only requires reasonable precaution." *Id.* (citing *Kort*, 394 F.3d at 539; *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("Although [the debt collector] could have done more . . . , § 1692k(c) only requires collectors to adopt reasonable procedures.")).

Defendant contends that he is entitled to assert the bona fide error defense because he honestly believes that even though the language of § 1692g(a)(3) does not expressly require that a debtor's dispute be in writing, such a requirement must be read into the statute in order for § 1692g(a)(3) to be effective. (Def.'s Mem. at 10.) Furthermore, Defendant asserts that he maintains procedures adapted to avoid violating the FDCPA. (*Id.*) Regarding Defendant's procedures, he asserts that he periodically conducts electronic database searches to determine whether the issue of written notification of a disputed debt has been resolved. (*Id.*) Defendant further states that he attended three Continuing Legal Education ("CLE") courses on debt collection pertaining to the FDCPA, trained his debt collection employees to comply with the FDCPA, held informal in-house training seminars for employees on consumer debt collection, and requires his employees to periodically read the FDCPA as well as a manual which covers the FDCPA. (*Id.*)

Plaintiffs, however, assert that Defendant failed to produce any documentation in the form of training manuals or CLE course materials during discovery to support his contention that he maintains procedures to comply with the provisions of the FDCPA. (Pls.' Reply at 8–9.) Plaintiffs point out that Defendant has never filed any documentation with the Court regarding his alleged procedures and admitted during a hearing held on May 16, 2007, that he had not provided any documentation on this issue to Plaintiffs. (*Id.* at 9.)

Because Defendant has failed to produce any evidence which establishes that he maintains procedures reasonably adapted to avoid violations of the FDCPA, the Court finds that a genuine issue of material fact remains as to whether Defendant maintains procedures reasonably calculated to avoid violations under the FDCPA in accordance with § 1692k(c).[6] Accordingly, the Court withholds judgment on whether Defendant's debt collection letters violate § 1692g(a)(3) by requiring that debt disputes be made in writing until the issue of whether Defendant is entitled to assert the bona fide error defense has been resolved.

To the extent that Plaintiffs also allege that Defendant violated §§ 1692d[7], 1692e[8], 1692e(10)[9], and 1692f[10] of the FDCPA by requiring written notice of the disputed debts, the Court

---

[6]Within 45 days of the issuance of this Opinion and Order, Defendant may file with the Court any documentation needed to demonstrate that he does, in fact, maintain procedures reasonably adapted to avoid violating the FDCPA. *See* 1692k(c).

[7]Section 1692d states: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

[8]Section 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Seventh Circuit has held that "§ 1692e applies even when a false representation was unintentional." *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000).

[9]Section 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

[10]Section 1692f states: "A debt collector may not use unfair or unconscionable means to collect or attempt

will consider whether Defendant violated these sections after the issue of whether he is entitled to the bona fide error defense has been decided. It bears mentioning, however, that Plaintiffs have not explained or developed their claims regarding these sections of the FDCPA in either their opening memorandum or reply brief. (*See* Pls.' Mem. at 18.) Accordingly, "it is not [the Court's] job to do counsel's work of organizing or formulating a party's arguments, . . . nor is it the Court's function to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Pratt v. Ill. Dep't of Corrections,* No. 06–CV–847, 2007 WL 4327861, at *3 n.3 (S.D. Ill. Dec. 11, 2007) (citations omitted).

## B.    Amount of the Debt

**(1)    *15 U.S.C. § 1692g(a)(1)***

Plaintiffs initially assert that Defendant violated § 1692g(a)(1) by failing to state the amount of the debt owed in the debt collection letters. (Pls.' Mem. at 20–21, Pls.' Reply at 3–4.) As is pertinent here, § 1692g(a)(1) provides that:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt.

Plaintiffs contend that there is "not a single paragraph" in the letters which provides a specific amount or "sum certain" as to the debt amount. (Pls.' Mem. at 21, Pls.' Reply at 4.) Plaintiffs point

---

to collect any debt." 15 U.S.C. § 1692f.

out that the language contained in the debt collection letters states: "IF YOU WANT TO RESOLVE THIS MATTER WITHOUT A LAWSUIT, now is the time for action. To do so you must pay the following amounts: (1) the full amount of the check plus, (2) a $20.00 returned check fee, and (3) attorney fees of $300.00. (Pls.' Reply at 3–4.) Thus, Plaintiffs assert that Defendant should have specifically stated the amount of the debt owed followed by a breakdown. (*Id*. at 4.)

In their reply brief, Plaintiffs drop their allegation that the December 1, 2005, debt collection letter sent to Ms. Campbell failed to state the amount of the debt. (Pls.' Reply at 3.) Rather, Plaintiffs state that "[a]s Mr. Hall was able to obtain a judgment against Ms. Campbell the issue of whether he stated the amount of the debt is a moot point at this time. Thus, the focus is on the letter to Ms. Duron." (*Id*.) Plaintiffs therefore contend that Defendant failed to state the amount of the alleged debt in the debt collection letter sent only as to Ms. Duron. (*Id*. at 3–4.)

Plaintiffs cite to *Miller v. McCalla, Raymer, Padrick*, *Cobb, Nichols & Clark, LLC*, 214 F.3d 872 (7th Cir. 2000) and *Fields v. Wilber Law Firm*, *P.C*., 383 F.3d 562 (7th Cir. 2004) as support for their position that there is "not a single paragraph in [Ms. Duron's] letter which provides a specific amount alleged as the debt amount." (Pls.' Reply at 4.) Plaintiffs, however, fail to explain or develop their claim and have not provided this Court with any type of reasoned analysis as to how the cases they cite support their contentions. Rather, Plaintiffs make a conclusory statement that "in *Fields*, the premise is that the amount of the debt is specifically stated, followed by breakdown" and that Defendant "has not complied with its' requirements." (*Id*.)

Initially, the Court notes that Plaintiffs' assertion that Defendant violated the FDCPA by failing to state the amount of the debt in Ms. Duron's March 6, 2006, letter is somewhat disingenuous in light of the fact that Defendant sent identical letters to both Ms. Campbell and Ms.

Duron. Thus, the December 1, 2005, letter sent to Ms. Campbell contained the identical language regarding the debt owed as the letter sent to Ms. Duron on March 6, 2006.

In reviewing the cases relied on by Plaintiffs, the Court finds that they are distinguishable from the case at bar. *Miller* involved a collection letter sent by a law firm to a mortgage debtor, which stated the "unpaid principal balance" of the loan was $178,844.65, but added that:

> this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property, as authorized by your loan agreement. The amount to reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures.

*Id.* at 875. The plaintiff contended that the letter failed to state the amount of the debt in violation of § 1692g(a)(1) and the Seventh Circuit agreed stating that "[t]he unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt." *Id.* In short, the Seventh Circuit determined that because the letter disclosed only the principal amount due, and not the additional amounts (e.g., accrued interest, expenses, and penalties) that the defendant knew as of the date of the letter, the letter did not state the amount of the debt. *Id.* Therefore, the debt collector should have "state[d] the total amount due–interest and other charges as well as principal–on the date the dunning letter was sent." *Id.* at 875–76.

In *Miller*, the Seventh Circuit created a "safe harbor" formulation for debt collectors to use where the amount of the debt varies from day to day:

> As of the date of this letter, you owe $____ [the exact amount due].Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800–[phone number].

*Miller*, 214 F.3d at 876. The Seventh Circuit noted that although the safe harbor language was not

required to comply with the FDCPA, its use would constitute compliance with the statute. *Id.*

Plaintiffs citation to *Miller* is inapposite because the dunning letter in that case did not state the full amount of the debt anywhere in the letter. First, the letter in *Miller* listed only the "unpaid principal balance" and never advised the debtor of the total amount due as the date of the letter. Next, the *Miller* letter excluded all interest, fees, and charges beyond the principal. Thus, in *Miller*, the debt collector was attempting to collect an unspecified amount in addition to the amount of the debt stated in the letter. Unlike *Miller*, however, the March 6, 2006, debt collection letter sent to Ms. Duron specifies the full amount of the debt because it states that "you must pay the following amounts: (1) the full amount of the check plus, (2) a $20.00 returned check fee, and (3) attorney fees of $300.00," which includes all of the components of the total amount of the debt owed. (Compl., Exs. A & B.) The full amount of the check, which is $230.00, is listed on the second line of the first paragraph of the letter. Thus, the three amounts delineated in the letter constitute the total amount of the debt. Therefore, on the face of the letter, the amount of the debt is clearly stated.

In *Fields*, the dunning letter at issue included attorney's fees in the amount due. *Fields*, 383 F.3d at 563. The plaintiff alleged that by including attorney's fees the defendant inaccurately stated the amount of the debt. *Id.* The Seventh Circuit held that it is permissible to include attorney's fees in the dunning letter, if the underlying contractual relationship between the debtor and creditor provided for recovery of such fees. *Id.* at 565. However, if "add–on" fees such as attorney's fees were authorized by contract, as in *Fields*, debt collectors "must still clearly and fairly communicate information about the amount of the debt to debtors" which "includes how the total amount due was determined if the demand for payment includes add–on expenses like attorneys' fees or collection

costs."[11]  *Id.* Thus, in *Fields*, the debt collector listed an account balance in the original dunning letter that exceeded the principal obligation by $266.48 and did not explain that it was seeking attorneys' fees of $250.00. *Id.* at 566. The Seventh Circuit held that the plaintiff stated claims under §§ 1692e and 1692f, but found that the plaintiff had not stated a claim for relief under § 1692g(a). *Id.*

*Fields* likewise is distinguishable from the case at bar. Here, Defendant's March 6, 2006, debt collection letter clearly provides a breakdown of the amounts being collected. As discussed, the letter states that "you must pay the following amounts: (1) the full amount of the check plus, (2) a $20.00 returned check fee, and (3) attorney fees of $300.00."  (Compl., Exs. A & B.)  Again, the full amount of the check, which is $230.00, is listed on the second line of the first paragraph of the letter.  Accordingly, the Court finds that the debt collection letter clearly itemizes the various charges that comprise the total amount of the debt unlike the letter in *Fields*.

The Court finds that the March 6, 2006, debt collection letter sent to Ms. Duron the amount of the debt is sufficiently clear.  *See e.g.*, *Taylor v. Cavalry Inv. L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004) ("a dunning letter must state the amount of the debt sufficiently clearly that the recipient is unlikely to misunderstand it."). While Plaintiffs appear to contend that the March 6, 2006, letter should have contained the total amount of the debt owed or a "sum certain," they have not presented any case law which supports this proposition.[12] Accordingly, because the amount of the debt is clearly stated, the March 6, 2006, debt collection letter would not tend to confuse an unsophisticated

---

[11]In both *Fields* and *Miller*, the defendant law firms were seeking the repayment of various costs, including legal fees, which were authorized by a debt agreement.

[12]A simple arithmetic calculation yields a result that the total debt amount was $550.00. It would not be unreasonable to expect an unsophisticated consumer or debtor to be able to add three figures together and come up with the $550.00 figure.

23

consumer or debtor.[13] *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) ("Mere speculation that the unsophisticated debtor *could* be confused by a dunning letter is not enough for an FDCPA plaintiff to survive a summary judgment motion.") (emphasis in original.)  Furthermore, Plaintiffs have failed to support their claim by coming forward with any evidence beyond the March 6, 2006, debt collection letter.  *Durkin*, 406 F.3d at 415 ("[W]hen the letter itself does not plainly reveal that it would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the letter and beyond his own self–serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial.")

**(2)** *Further Communications*

Plaintiffs next claim that Defendant violated § 1692g(a) because he did not send any further communications regarding the debts they owed. (Pls.' Mem. at 21.) In the reply brief, however, Plaintiffs appear to drop this assertion as to Ms. Campbell and state only that "Defendant did not send Ms. Duron any further communications regarding her alleged debt with Payday Today within five (5) days after the date of the dunning letter." (Pls.' Reply at 4.)

Specifically, § 1692g(a) requires debt collectors to send a written validation notice containing certain information to a consumer debtor within five days after the initial communication. The notice must include the amount of the debt, 15 U.S.C. § 1692g(a)(1), the name of the creditor, 15 U.S.C. § 1692g(a)(2), and a statement that, unless the debtor "disputes the validity of the debt . . . the debt will be assumed to be valid by the debt collector," 15 U.S.C. § 1692g(a)(3). In addition, the notice must disclose that the debt collector, upon written request by the debtor within thirty days

---

[13]Ms. Campbell testified at her deposition that she was not confused by language in the debt collection letter and understood the amount of the debt she owed was $550.00.  (Campbell Dep. at 21–23.)

of receiving the notice, will provide verification of the debt, 15 U.S.C. 1692g(a)(4), and also provide the name and address of the original creditor, if different from the current creditor, 15 U.S.C. § 1692g(a)(5).

Defendant was not required to send any further communications to Ms. Duron because she notified Defendant by email on March 7, 2006, that she had filed for bankruptcy in October 2005, and her bankruptcy was discharged on February 6, 2006. (Facts ¶ 15.)  Because there was no debt for Defendant to collect from Ms. Duron, as it had been discharged in bankruptcy, Defendant appropriately took no further action. (*Id.*)  Had Defendant had instituted further collection practices as to Ms. Duron, he would have violated § 1692g(b) – Disputed debts. Specifically, § 1692g(b) states:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

In other words, once Defendant was notified by Ms. Duron that the debt was disputed because it had been discharged in bankruptcy, Defendant was required to "cease collection of the debt." As stated, Defendant appropriately took no further action with respect to Ms. Duron.[14]

Plaintiffs further contend that Defendant violated §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f. (Pls.' Mem. at 21, Pls.' Reply at 4.)  However, the Court is unable to discern whether the

---

[14]Because Defendant was not required to send Ms. Duron any further communications, the Court does not need to consider whether the March 6, 2006, debt collection letter Defendant sent to Ms. Duron complies with the debt validation requirements of § 1692g(a). (Def.'s Mem. at 10–13.) Accordingly, the Court does not need to consider Defendant's assertion regarding the bona fide error defense as it applies to § 1692g(a)(5).

additional FDCPA provisions Plaintiffs claim Defendant violated apply to their contention that Defendant failed to state the amount of debt or if they are claiming that these FDCPA provisions apply to their allegation that Defendant failed to send any further communications to Ms. Duron. (*Id.*) Because Plaintiffs do not explain or develop their arguments with respect to these FDCPA provisions, they have waived them. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Am. Nat'l Bank and Trust Co. of Chi. v. Alps Elec. Co., Ltd.*, No. 99 C 6990, 2002 WL 484849, at *2 (N.D. Ill. Mar. 29, 2002) ("[T]he court is not required to scour the record to unearth material factual disputes or evidentiary support for a party's position.") Thus, "it is not [the Court's] job to do counsel's work of organizing or formulating a party's arguments, . . . nor is it the Court's function to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Pratt*, 2007 WL 4327861, at *3 n.3; *see also U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

## C.     Thirty–Day Debt Validation Period

Plaintiffs argue that Defendant violated § 1692g(a)(3) by shortening the statutory thirty–day period for disputing the validity of their debts. (Pls.' Mem. at 3, Pls.' Reply at 5.) As is pertinent here, § 1692g(a)(3) provides:

(a)  Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(3) a statement that unless the consumer, within thirty days after receipt of the notice,

disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

Plaintiffs appear to base their assertion on the language in Defendant's debt collection letters which states: "IF YOU DISPUTE THIS DEBT, or any portion thereof, you must notify this office in writing of that fact within 30 days of this letter." (Compl., Exs. A & B.) Thus, Plaintiffs assert that the plain language of the statute permits the dispute period to begin running "upon receipt of a dunning letter" or, in other words, a debtor may dispute a debt "within thirty days after receipt of the notice." (Pls.' Reply at 5, § 1692g(a)(3).) Plaintiffs further point out that Defendant admits that he omitted the words "of the receipt of" so that the sentence would read "within 30 days of the receipt of this letter" and asserts this omission was a clerical error, which falls within the bona fide error defense. (Pls.' Reply at 5, Def.'s Mem. at 13–14.)

Plaintiffs cite to *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997) in this section of their reply, but do not explain how this case supports their position. In *Chauncey*, the debt collector set forth conflicting statements, which included first demanding payment in full within thirty days, and in separate language acknowledged that the debtor had the right to dispute the debt. *Id.* at 518 ("Unless we receive a check or money order for the balance, in full, within thirty (30) days from receipt of this letter, a decision to pursue other avenues to collect the amount due will be made. Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid."). The district court granted Plaintiff's motion for summary judgment "because the thirty–day payment requirement set out in the [first paragraph of the] collection letter contradict[ed] the mandatory validation notice disclosures allowing thirty days to dispute the debt." *Id.*

In *Chauncey*, the Seventh Circuit agreed with the district court:

> The statement in the first paragraph of defendant's letter – "Unless we receive a check or money order for the balance, in full, within thirty (30) days from receipt of this letter, a decision to pursue other avenues to collect the amount due will be made" –contradicts the language in the letter explaining the plaintiff's validation rights under the FDCPA, which allows plaintiff 30 days in which to dispute the debt and request verification. We believe that the contradictions in the letter, as in *Avila* [*v. Rubin*, 84 F.3d 222 (7th Cir. 1996)], would leave an unsophisticated consumer confused as to what his rights are and therefore violate the FDCPA.

> Defendant argues that the letter contains no contradiction because plaintiff is given the same amount of time to pay as to contest the debt (*i.e.*, "within thirty (30) days"). But the letter required that plaintiff's payment be *received* within the 30–day period, thus requiring plaintiff to mail the payment prior to the thirtieth day to comply. In contrast, subparagraphs (3) and (4) of § 1692g(a) give the consumer thirty days after receipt of the notice to dispute the validity of a debt. It is clear that Mr. Chauncey had the full thirty days to send his notification to defendant. Nothing in Section 1692g requires, and we have found no other court decision which has required, that the debt collector must *receive* notice of the dispute within thirty days as defendant insists. The district court's holding is consistent with *Avila*, 84 F.3d at 226, where we described Section 1692g as follows: "Essentially, the notice required by § 1692g must tell the target that she has 30 days to dispute the validity of all or a portion of the debt." If we were to hold that the validation request must be *received* by the thirtieth day, we would be rewriting Section 1692g, which we are not entitled to do.

*Id.* at 519. (emphasis in original.)

The Court finds that the language contained in the debt collection letter in *Chauncey* is distinguishable from the language contained in the instant letters. Specifically, the language contained in Defendant's letters stating "IF YOU DISPUTE THIS DEBT, or any portion thereof, you must notify this office in writing of that fact within 30 days of this letter" does not require that a dispute regarding the validity of a debt be *received* by Defendant within thirty days of the date of the letters. Rather, the language in the debt collection letters states that any dispute by Plaintiffs must be made "within 30 days of this letter." On the basis of this language, it is reasonable to assume that Plaintiffs had thirty days from when they received the letters to dispute the validity of their debts.

Therefore, the letters do not require that Plaintiffs provide notice of a debt dispute within thirty days of the date of the letters. Accordingly, because *Chauncey* does not support Plaintiffs' contention that Defendant's debt collection letters violate § 1692g(a)(3) by shortening the statutory thirty–day period in which they are permitted to dispute their debts, Defendant is entitled to summary judgment on this issue.[15]

### D.     Literally False Statements

Plaintiffs assert in their memorandum and reply that Defendant made literally false statements in the debt collection letters in violation of §§ 1692d, 1692e, 1692e(2)(A), 1692e(10) and 1692f. (Pls.' Mem. at 7–11, 19–20, Pls.' Reply at 5–6.)  Specifically, Plaintiffs claim that the following four statements made by Defendant are literally false:

1) "IF YOU DISPUTE THIS DEBT, or any portion thereof, you must notify this office in writing of that fact within 30 days of this letter."

2) "This debt will be assumed to be valid under the law unless you so dispute the debt."

3) "To avoid the penalties and consequences stated herein you must contact the law office of Edward R. Hall to discuss your outstanding balance."

4) "IF YOU WANT TO RESOLVE THIS MATTER WITHOUT A LAWSUIT, now is the time for action. To do so you must pay the following amounts: (1) the full amount of the check plus, (2) a $20.00 returned check fee, and (3) attorney fees of $300.00.

(Pls.' Mem. at 19–20,  Pls.' Reply at 5–6, Compl., Exs. A & B.) Thus, while Plaintiffs claim these statements are literally false, they fail to provide this Court with a specific and detailed explanation regarding why these alleged false statements give rise to liability under the FDCPA. Accordingly,

---

[15]In view of the Court's ruling on the thirty–day statutory period issue, Defendant's assertion regarding the bona fide error defense does not need to be considered. (Def.'s Mem. at 13–14.)

if Plaintiffs wish to pursue this claim, they must provide this Court with a detailed memorandum explaining their bases for asserting why these statements are literally false with reference to specific authority supporting their allegations that these statements establish liability under the FDCPA.[16]

## CONCLUSION

In view of the foregoing, the Court **DENIES** Plaintiffs' Motion for Summary Judgment [DE 21] with respect to (1) the amount of the debt issue, 15 U.S.C. § 1692g(a)(1); (2) the further communications issue, 15 U.S.C. § 1692g(a); and (3) the thirty–day debt validation issue, 15 U.S.C. § 1692g(a)(3). The Court **GRANTS** Defendant's Cross–Motion for Summary Judgment [DE 31] as to these issues. Furthermore, the Court **WITHHOLDS JUDGMENT** on the issue of whether (1) Defendant is liable under § 1692g(a)(3) by requiring that debt disputes be made in writing until the issue of whether Defendant is entitled to assert the bona fide error defense has been resolved; and (2) the statements Plaintiffs allege do, in fact, constitute literally false statements for which liability under the FDCPA may be imposed. Defendant's request for attorney's fees is denied.

SO ORDERED on March 17, 2009.

s /Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE

---

[16]Plaintiffs shall file supplemental briefing on the literally false statements issue within 45 days of the issuance of this Opinion and Order, if they wish to pursue this claim.